IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:05-cr-170 |
| v. | : | Judge Holschuh |
| FRANCIS J. HOLTZHAUER | : | Magistrate Judge Abel |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

This matter is before the Magistrate Judge on Defendant Francis J. Holtzhauer's October 11, 2005 motion to dismiss the United States of America's criminal complaint because the government's interpretation is unconstitutional (doc. 10). Holtzhauer is charged with entering an area of Port Columbus International Airport while carrying a loaded gun in his baggage in violation of 49 U.S.C. § 46314. Holtzhauer argues that the charge against him must be dismissed because the government is misreading and misapplying the statute in a way that makes the statute an unconstitutional strict liability offense.

The statute states that "[a] person may not knowingly and willfully enter, in violation of security requirements prescribed under section 44901, 44903(b) or (c), or 44906 of this title, an aircraft area that serves an air carrier or foreign air carrier." 49 U.S.C. § 46314. The government maintains that the words knowingly and willfully only modify the word "enter"; the statute does not require the defendant to knowingly and willfully carry a weapon in violation of a security requirement. Holtzhauer argues that the phrase "in violation of security requirements . . ." should be read first when determ-


ining what the phrase "knowingly and willfully" modifies.  Since, defendant maintains, there are two arguable readings of the statute, the court should chose the reading that clearly passes constitutional muster.  Courts have held some criminal statutes that lack a *scienter* element unconstitutional.  Defendant points to *United States v. Lee,* 539 F.2d 606, 608 (6th Cir. 1976); *United States v. Garrett,* 984 F.2d 1402, 1410-11 (5th Cir. 1993); and *United States v. Hendrick,* 207 F.Supp.2d 710, 715 (S.D. Ohio 2002).  These cases read a *scienter* element into 49 U.S.C. §1472(l), which defendant asserts is the predecessor of 49 U.S.C. § 46314.[1]

The Government responds by arguing that Holtzhauer misunderstands statutory construction: the grammar of the sentence shows Congress's intent to limit the *scienter* element to entering the airport and the government's interpretation does not create a strict liability offense because the defendant must knowingly and willingly enter the airport.

---

[1] The statutes protect against related dangers, but § 1472(l), which is now codified as 49 U.S.C. § 46505(b)(1), is not a predecessor of § 46314.  Sections 1472(l) and 46505(b)(1) prohibit a person on or attempting to get on an aircraft to have a dangerous weapon that would be accessible during flight.  A violation is a felony.  Section 46314(a) prohibits a person from entering an "aircraft or an airport area that serves an air carrier" in violation of statutorily prescribed security requirements. The violation is a misdemeanor.  A person who violates 46314(a) "with intent to commit, in the aircraft or airport area, a felony" commits a felony.

**I. Discussion.**

    **A. Statutory Grammar.**

The statute in *Garrett* had no express *mens rea* element.[2] In contrast, § 46314(a) has an express *mens rea* element: the conduct must be done "knowingly and willfully." So the first question is *what conduct* must be knowing and willful? That depends on how the one sentence statutory prohibition is read. It provides:

> A person may not knowingly and willfully enter, in violation of security requirements prescribed under section 44901, 44903(b) or (c) of this title, an aircraft or an airport area that serves an air carrier or foreign air carrier.

A statute should be read grammatically to express its ordinary meaning. *Ardestani v. I.N.S.,* 502 U.S. 129, 135 (1991). Here the subject of the sentence is "a person." The verb is "enter," and the object is "an aircraft or an airport area." "Knowingly and willfully" are adverbs modifying "enter." "In violation of security requirements prescribed under section 44901, 44903(b) or (c) of this title" is a prepositional phrase acting as an adverb modifying "enter." Both answer the question: enter how?

The question for statutory construction is whether these two adverbial constructions should be read together as one element of the crime or separately (serially) as two distinct elements. The Government argues that they should be read separately: (1) "A person may not knowingly enter . . . an aircraft or an airport area" and (2) "A person

---

[2]Section 1472(l)(1) reads:

> With respect to any aircraft in, or intended for operation in air transportation or intrastate air transportation, whoever–(a) while aboard or while attempting to board such aircraft has on or about his person or his property a concealed deadly or dangerous weapon which is, or could be, accessible to such person in flight; . . . shall be fined not more than $10,000 or imprisoned not more than one year, or both.

may not . . . enter in violation of security requirements prescribed under section 44901, 44903(b) or (c) of this title, an aircraft or an airport area . . . ." Defendant argues that they should be read together as one element: "A person shall not knowingly and willfully [in violation of security requirements prescribed under section 44901, 44903(b) or (c) of this title, enter] an aircraft or an airport area . . . ." Both readings are plausible. Neither is clearly and unambiguously the "plain meaning" of the sentence.

If the Government's reading is adopted, then the adverbs "knowingly and willfully" are in a practical, everyday sense meaningless. Except in the cases of mental incompetence or duress, every person who enters "an aircraft or an airport area that serves an air carrier or foreign air carrier" does so knowingly and willfully. A conscious, mentally competent person knows whether he is at an airport and knows when he is entering an airport area that serves an air carrier. His volitional act of entering the area is legally willful. An intent requirement that focuses solely on an everyday physical act gives the person no notice of what is prohibited. *See, Lambert v. California,* 355 U.S. 225, 228-30 (1958). Moreover, there are clearer, unambiguous ways to write a statue to limit "knowingly and willfully" to the act of entering. For example, the statute might read: No person who possesses an object that is prohibited by security requirements prescribed under section 44901, 44903(b) or (c) of this title shall knowingly and willfully enter an aircraft or an airport area that serves an air carrier or foreign air carrier.

On the other hand, defendant's reading suffers from several deficiencies. First, although the parenthetical expression "in violation of security requirements prescribed under section 44901, 44903(b) or (c) of this title" clearly modifies "enter," it is set off by commas from both that verb and the adverbs "knowingly and willfully." Had it been

-4-

Congress's intent to require the Government to prove that a defendant knowingly and willfully possessed an object prohibited by the title, it would have been easy to unambiguously attain that end.  For example, the sentence could have read: A person may not enter  an aircraft or an airport area that serves an air carrier or foreign air carrier, knowingly and willfully in possession of an object prohibited by security requirements prescribed under section 44901, 44903(b) or (c) of this title.  Second, "knowingly and willfully" and "in violation of security requirements prescribed under section 44901, 44903(b) or (c) of this title" both modify "enter."  There is no strong reason to read the sentence: No person shall knowingly and willfully [enter in violation of security requirements prescribed under section 44901, 44903(b) or (c) of this title] an aircraft or an airport area that serves an air carrier or foreign air carrier.  Indeed, that reading is clumsy, and for it to make sense, the parenthetical commas must be removed.  It is, perhaps, easier to read the adverbs and the adverbial prepositional phrase as serially and separately modifying "enter."

     Even though these observations deserve consideration when attempting to understand the statute's commands, the adverbial prepositional phrase "in violation of security requirements . . ." does modify "enter."  That is, it limits and more carefully describes the verb.  It says that the only occasions of "enter" considered by the statute are those entries in violation of security requirements.  When "knowingly and willfully" modifies the verb, the only relevant instances of "entry" are those "in violation of security requirements . . ."

     So far, my analysis has focused on this one sentence.  However, the canons of construction require a judge to look at the statute as a whole. *Pilot Life Ins. Co. v. Ded-*

*eaux,* 481 U.S. 41, 51 (1987). As the Government points out, here there are two subsections. The first, 49 U.S.C. § 46314(a) establishes a misdemeanor offense. The second, § 43614(b)(2) creates a felony offense. That subsection reads:

> A person violating subsection (a) of this section with intent to commit, in the aircraft or airport area, a felony under a law of the United States or a State shall be fined under title 18, imprisoned for not more than 10 years, or both.

The Government argues that defendant's reading of § 46314(a) treats both it and § 43614(b)(2) as "creating the same offense." United States' October 21, 2005 Memorandum Contra (doc. 11) at p. 6. That is, both subsections "would require intentional entry into an airport area and intentional violation of security regulations or law." *Id.* But that is not the case. The misdemeanor would penalize the knowing and willful entry of an airport area by a person who knowingly and willfully possessed prohibited items. The felony would penalize the person who committed the misdemeanor "with the intent to commit a [separate] felony" in the airport area. In many states, including Ohio, a person may lawfully carry a concealed weapon. The felony to be committed in the airport area is not possession of the prohibited item; it is an offense the perpetrator intends to commit there with the prohibited item. For example, a person might enter the airport area in possession of a small-bladed knife with the intent to feloniously harm another. These two provisions are not the same, and they do not prohibit the same conduct. Including a *mens rea* requirement in the misdemeanor provision would not render the felony provision superfluous.

### B. Case Law Discussing Criminal Strict Liability.

Holtzhauer argues that case law supports his argument that a *mens rea* requirement must be read into § 46314(a). The "traditional rule" is that criminal statutes have some *mens rea* requirement and, generally, statutes that criminalize conduct that lack *mens rea* are disfavored. *Staples v. United States*, 511 U.S. 600, 606 (1994). The "purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction." *Morissette v. United States*, 342 U.S. 246, 263 (1952). The Court has suggested that for it to hold that a statute has dispensed with the *mens rea* requirement, there must be "some indication of congressional intent, express or implied" that *mens rea* is not an element of the offense. *Staples,* 511 U.S. at 606. There is a line of cases holding that Congress intended to dispense with the *mens rea* requirement; the crimes in these cases have been termed "regulatory" or "public welfare offenses." *Id.*

Courts have typically found statutes regulatory in nature when the offense imposes strict liability to "regulate potentially harmful or injurious items." *Staples,* 511 U.S. at 607.

> In such situations, [the Court] has reasoned that as long as a defendant knows that he is dealing with a dangerous device of a character that places him "in responsible relation to a public danger," he should be alerted to the strict regulation, and we have assumed that in such cases Congress intended to place the burden on the defendant to "ascertain at his peril whether [his conduct] comes with the inhibition of the statute. Thus, we essentially have relied on the nature of the statute and the particular character of the items regulated to determine whether congressional silence concerning the mental element of the offense should be interpreted as dispensing with conventional *mens rea* requirements.

*Id.* (citations omitted). The Court noted that by requiring the criminal defendant to "know

that he is dealing with some dangerous or deleterious substance, we have avoided construing criminal statutes to impose a rigorous form of strict liability." *Id.* at n. 3. The Court further suggested that an offense is regulatory in nature if it is in the "interest of public safety." *Id.* at 609. (citation omitted). However, the Court has been careful "to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of innocent conduct.'" *Id.* at 610-11 (quoting *Liparota v. United States,* 471 U.S. 419, 426 (1985)) (discussing the difference between the possession of firearms, where there has been a long tradition of lawful gun ownership, versus the possession of hand grenades, where there is no such tradition, which makes it more likely that the possession of hand grenades would be a strict liability offense. The Court further stated concern that strict liability for those possessing guns, even automatic weapons, could lead to convicting innocent persons because the possession of "guns generally can be owned in perfect innocence.").³

In *Staples*, the Court was deciding whether § 5861(d), which criminalized the possession of unregistered handguns, had a *mens rea* requirement. The Court stated "that where, as here, dispensing with *mens rea* would require the defendant to have

---

³ The Court went on to state

> But precisely because guns falling outside those categories traditionally have been widely accepted as lawful possessions, their destructive potential, while perhaps even greater than that of some items we would classify along with narcotics and hand grenades, cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting § 5861(d) as not requiring proof of knowledge of a weapon's characteristics.

*Id.* at 612.

knowledge only of traditionally lawful conduct, a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement." *Id*. at 618-19.

In *Garrett,* the statute in issue prohibited airline passengers from bringing concealed dangerous or deadly weapons onto a plane. Violators could be punished with a fine of up to $10,000, imprisonment of not more than a year, or both. *Garrett,* 984 F.2d at 1405. The court began by stating that its overarching task was determining whether Congress intended section 1472(l)(1) to have a *mens rea* requirement. The court also recognized that Congress was "fully capable of creating strict liability crimes when it is their intent to do so." *Id.* at 1409.

To determine Congress's intent, one should begin by looking at the language of the statute. *Id.* Further, consideration should be given to the presumption of a *mens rea* requirement as a "predicate to criminal liability" for federal crimes. *Id.* at 1410.

In *Garrett,* the court determined that section 1472(l)(1) required "some *mens rea*." *Id.* at 1411. Reasoning that absent a finding that there was some culpability requirement, there were potentially due process concerns because the statute involved could be used to impose "fairly substantial penalties [on] someone who did not know and had no reason to know that he was carrying a weapon." *Id*. The court held for a violator to be convicted, the prosecution would need to establish "some *mens rea*" and that a "should have known" standard was sufficient to meet the degree of culpability to establish a violation. *Id.* at 1412.

In *United States v. Lee*, 539 F.2d 606 (6th Cir. 1976), the court discussed the *scienter* element applicable to 49 U.S.C. § 1472(l). The court stated that

> a serious question of due process of law would be raised if a person could be convicted under subsection (l) on the theory that any person presenting himself and his carry-on luggage for boarding inspection would be held strictly accountable for whatever may have been inadvertently left in his carry-on luggage or even might have been surreptitiously placed there by the act of another, for whatever reason.

*Id.* at 608 n. 3. The court concluded that knowing possession, as opposed to knowledge of the legal violation, was an element of the offense. *Id.* However, the discussions of *mens rea* has little precedential value because the question at issue was whether the defendant could withdraw his consent to have the magistrate judge hear his case. Accordingly, the discussion of *mens rea* in *Lee*, while persuasive, is dicta, not binding precedent.

There are two other cases that are noteworthy even though they involve very different statutes. However, each one discusses the due process concerns created by strict liability criminal offenses. In *United States v. Wulff*, 758 F.2d 1121 (6th Cir. 1985), the court held that the Migratory Bird Treaty Act's ("MTBA"), 16 U.S.C. § 703, *et seq.*, felony provisions were unconstitutional because they created strict liability offenses.

The court reasoned that the provisions were unconstitutional "because the law [in question was] not one derived from the common law, not generally known to the public, and the felony penalty provisions were severe and conviction would result in irreparable damages to one's reputation. *Id.* at 1122. A violator could spend up to two years in prison, be fined $2,000, or both.

The court stated that the test for determining whether the penalty is serious enough to require criminal intent as an element of the offense is (1) whether the penalty is relatively small, and (2) whether conviction would "gravely besmirch." *Id.* at 1125.

Whether one would be gravely besmirched appears to turn on whether a felony conviction would irreparably damage one's reputation and whether the defendant, if convicted, would suffer the loss of other civil rights such as losing the ability to own a weapon. *Id.*

In *Lambert v. People of the State of Cal.*, 355 U.S. 225 (1958), the challenged criminal statute required convicted persons to register with the city where they resided. In holding this strict liability offense unconstitutional, the Court noted that violators who failed to register had no reason to know that their conduct violated the law and therefore were blameless for failing to register. *Id.* at 243.

First, it must be stated that *Garrett* and *Lee* are not controlling of the matter currently before the court. *Garrett* and *Lee* both involved statutes that had no expressed *mens rea* requirement. In this case, the statute does have a *mens rea* requirement, knowingly and willfully.

As a matter of constitutional law and government policy, Congress certainly could conclude that carrying a pistol or other obviously dangerous weapon into an airport security area represents such a danger–one known to all persons who fly by public air carrier–that possession should be punished as a misdemeanor regardless of whether the violator knew that he had a weapon when he entered. However, § 46314(a) imposes a penalty of up to one year in prison not only for the possession of a pistol or a dangerous weapon, but for possession of any article "prescribed under section 44901, 44903(b) or (c) . . . ." At the time of the offense charged, those items included nail clippers, nail files, scissors, toy weapons, safety razors, baseball bats, golf clubs, pool cues, hammers, tools, wrenches, pliers, and many other items. Especially, before the

-11-

recent loosening of these regulations, many such items were seized from airline passengers on a daily basis.  As read by the United States, each time an airline passenger entered an airport in possession of one of these items, he or she committed a misdemeanor offense.

Did Congress intend that every person who knowingly and willfully entered an airport area that serves aircraft with a nail clipper or nail file in a purse or overnight bag be guilty of a misdemeanor offense carrying a penalty of up to a year in jail?  The everyday nature of many prohibited objects and the ease with which a nail clipper placed in an overnight bag for a trip by automobile might be overlooked when the possessor next packs the bag for a trip by air carrier, strongly suggests that Congress intended that the person knew or should have known that the prohibited item was in the bag and that he willfully entered the area with that knowledge.

On the other hand, given the highjackings and other acts of terrorism over the last 25 years, it is certainly more than arguable that Congress could believe that any person who possessed a carry on bag containing a pistol, hunting knife, or other obvious weapon should be guilty of a misdemeanor regardless of whether the Government could prove *mens rea*.  Is it a reasonable construction of this arguably ambiguous statute to read it as requiring the Government to prove that the person knowingly and willfully entered the area, knowingly and willfully in violation of security requirements that one not possess a pistol, hunting knife, or other weapon?  The argument for knowingly and willfully applying to "in violation of security requirements" is that those terms are susceptible to varying readings.  For example, if "knowing" is construed objectively as "a reasonable person should have known," then a fact-finder would likely conclude that a

reasonable person would not enter an airport area with a bag without first carefully searching it for guns or other dangerous weapons.  Further, such entry would be "willful" if the person entered an airport area of his own free will and in possession of his mental faculties without first carefully searching the bag for weapons.  On the other hand, if a person entered with a nail clipper or nail file in the bag, the fact finder might come to a contrary conclusion.

But resolution of defendant's motion to dismiss does not require resolution of the question argued in the briefs.  Defendant has no right to dismissal of the information because no matter which reading of the statute is adopted, the information charges an offense.  Whether the Government can prove that offense is a matter for trial.

## II.  Conclusion.

Accordingly, I **RECOMMEND** that Defendant Francis J. Holtzhauer's October 11, 2005 motion to dismiss the United States of America's criminal complaint because the government's interpretation is unconstitutional (doc. 10) be **DENIED**.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See Thomas*

*v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

                                                    /s/ Mark R. Abel
                                                    United States Magistrate Judge